UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS


NASSRIN PISHDADIYAN,
       Plaintiff,


       v.                                        CIVIL ACTION NO.
                                                 11-10723-JLT


HILLARY RODHAM CLINTON,
Secretary of State of the
United States of America,
       Defendant.


**REPORT AND RECOMMENDATION RE:
DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION PURSUANT TO FED. R. CIV. P.
12(B)(1) AND FOR FAILURE TO STATE A CLAIM PURSUANT
TO FED. R. CIV. P. 12(B)(6)
(DOCKET ENTRY # 11)**

**MEMORANDUM AND ORDER:
PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
PURSUANT TO FED. CIV. P. R. 15[1]
(DOCKET ENTRY 16)**

**February 7, 2012**


**BOWLER, U.S.M.J.**

    Pending before this court is a motion to dismiss filed by

defendant Hillary R. Clinton ("defendant"), Secretary of State of

---

[1]  This court has "the authority to decide the motion to
amend outright" under 28 U.S.C. § 636(b)(1)(A).  Maurice v. State
Farm Mutual Automobile Insurance Co., 235 F.3d 7, 9 n. 2 (1st
Cir. 2000) (referring to a motion for leave to file an amended
complaint to add a new count).

the United States of America. (Docket Entry # 11). Plaintiff

Nassrin Pishdadiyan ("plaintiff") opposes the motion (Docket

Entry # 14) and separately moves to amend the complaint (Docket

Entry # 16). After conducting a hearing on August 18, 2011, this

court took the motion to dismiss (Docket Entry # 11) under

advisement. Plaintiff filed the motion to amend one month later,

on September 15, 2011. (Docket Entry # 16).


## PROCEDURAL HISTORY

On April 27, 2011, plaintiff filed a complaint seeking a

writ of mandamus against defendant. (Docket Entry # 2). In

particular, the complaint requests a writ of mandamus under 28

U.S.C. § 1361 ("section 1361") to compel defendant to "correctly

adjudicate" the Application for Immigrant Visa and Alien

Registration ("the visa petition") (Docket Entry # 2, Ex. A) she

filed on behalf of her son, Behzad Abdinozari ("plaintiff's

son"). Plaintiff seeks a range of statutory penalties and

damages. She also seeks to amend the complaint to add claims of

negligence, negligent infliction of emotional distress and

misrepresentation. (Docket Entry # 16).


## FACTUAL BACKGROUND

A.  The Visa Application Process

    Understanding the case at bar requires familiarity with the family sponsored immigration process and, specifically, the family preference system.  See 8 U.S.C. § 1153 (describing family preference system for allocation of visas).  "Family-sponsored immigration is one of the primary avenues by which an alien can obtain lawful permanent residence in the United States, along with employment-based immigration, diversity-based immigration, and asylum."  See Cuellar de Osorio v. Mayorkas, 656 F.3d 954, 956 (9th Cir. 2011).  The family sponsored immigration process allows a United States citizen or lawful permanent resident ("LPR") to file a form I-130 immigration petition ("I-130 petition") on behalf of an alien relative, such as a child.  8 U.S.C. § 1153(a).  Section 204 of the Immigration and Nationality Act, 8 U.S.C. § 1154(a)(1) ("INA"), requires any citizen or LPR who desires that a family member receive an immigrant visa to file a petition with the United States Citizenship and Immigration Services ("USCIS").  The citizen or LPR who files the petition is the petitioner and the sponsored immigrant is the primary beneficiary.  See Cuellar de Osorio, 656 F.3d at 956.  Ordinarily, an immigrant cannot self petition but must be sponsored by a family member who is a citizen or an LPR.  See Li

3

v. Renaud, 654 F.3d 376, 378 (2nd Cir. 2011).

Once the petition is filed, the USCIS determines if it establishes a qualifying relationship between the citizen or LPR and the alien relative primary beneficiary. Cuellar de Osorio, 656 F.3d at 956. USCIS also conducts an investigation into whether the immigrant is qualified to be a beneficiary for purposes of any of the family preference categories. See 8 U.S.C. § 1154(b). Once USCIS determines that the primary beneficiary is qualified, it approves the petition. See Drax v. Reno, 338 F.3d 98, 114 (2nd Cir. 2003); accord Bolvito v. Mukasey, 527 F.3d 428, 430 (5th Cir. 2008). If an I-130 petition establishes one of the qualifying relationships, USCIS approves the petition and places the primary beneficiary "in line" in the appropriate preference category according to the I-130 petition's "priority date." Cuellar de Osorio, 656 F.3d at 956. The "priority date" is determined by the date on which the I-130 petition was filed. See id.

USCIS' approval of an I-130 petition does not automatically cause the agency to issue a visa or grant LPR status to the primary beneficiary. Instead, the beneficiary receives a place in line to wait for a visa number. Bolvito, 527 F.3d at 431 n.4. Thus, after USCIS' approval, the I-130 petition is "forwarded to

4

the State Department and on to the officials in a consulate" for

consular processing for issuance or denial of the I-130 petition.

Lihua Jiang v. Clinton, 2011 WL 5983353, *1 (E.D.N.Y. Nov. 28,

2011); 8 C.F.R. § 204.2(d)(3) (the "approved petition will be

forwarded to the Department of State's Processing Center"); 8

U.S.C. § 1201(a).  Furthermore, USCIS' approval of the I-130

petition does not allow the primary beneficiary to enter the

United States.  Rather, he must await assignment of a visa number

before entering the country.  See 8 C.F.R. § 204.2(d)(3); see

also 8 U.S.C. § 1153(a)(2) (outlining number of available visa

numbers per year for unmarried sons and daughters of citizens or

LPRs).

   The INA caps the number of visas available annually for

qualified relatives, i.e., primary beneficiaries.  See 8 U.S.C. §

1151(c).  To allocate visas, the INA uses a family preference

system based on designated categories set forth in section 203 of

the INA, which reads:

   (a) Preference allocation for family-sponsored immigrants

   Aliens subject to the worldwide [numerical limitation] for
   family-sponsored immigrants shall be allotted visas as
   follows:

   (1) Unmarried sons and daughters [age 21 or older] of
   citizens

> Qualified immigrants who are the unmarried sons or daughters
> of citizens of the United States shall be allocated visas in
> a number not to exceed [numerical quota formula].
>
> (2) Spouses and unmarried sons and unmarried daughters of
> permanent resident aliens
>
> Qualified immigrants—
>
> (A) who are the spouses or children [under age 21] of an
> alien lawfully admitted for permanent residence, or
>
> (B) who are the unmarried sons or unmarried daughters (but
> are not the children) of an alien lawfully admitted for
> permanent residence,
>
> shall be allocated visas in a number not to exceed
> [numerical quota formula].

8 U.S.C. § 1153(a) ("section 1153(a)").  These family preference

categories are referred to as F1, F2A and F2B, corresponding to

the numbered paragraphs in section 1153(a).  See Cuellar de

Osorio, 656 F.3d at 957.  I-130 petitions sought for either

"children" or "unmarried sons or daughters" of LPRs under section

1153(a) are therefore referred to as F2A and F2B visas,

respectively.[2]  See id.; 8 U.S.C. § 1153(a).  F2A visas refer to

visas granted to the spouses or children of LPRs.  See 8 U.S.C. §

1153(a)(2)(A); see also Li, 654 F.3d at 378.  F2B visas refer to

visas granted to the unmarried sons or daughters of LPRs who are

over the age of 21.  See 8 U.S.C. § 1153(a)(2)(B); see also Li,

_____

[2]  This opinion also refers to such F2A and F2B visas as F2A
and F2B family preference categories.

654 F.3d at 378.  The primary beneficiary of a petitioner seeking an F2A visa classified under 8 U.S.C. § 1153(a)(2)(A) must satisfy the statutory definition of "child" as determined by the statute.  See 8 U.S.C. § 1153(h)(1) (creating rules for determining which aliens qualify as "children" for purposes of F2A visas); see also 8 U.S.C. § 1101(b)(1) (defining "child" to mean "unmarried person under twenty-one years of age").

Because annual demand for family preference visas exceeds the statutory cap in all categories, a primary beneficiary may wait years before a visa becomes available, with certain categories having longer waiting times than others.  See Cuellar de Osorio, 656 F.3d at 957.  Each month "the State Department publishes a visa bulletin with updated 'cut off dates' for each family preference category," including for F2A and F2B visas. Id.  "When the cut-off date is later than the beneficiary's priority date, the priority date is 'current,' and a lawful permanent resident visa is then available for the [primary] beneficiary."  Id.  "In order to obtain the visa and become an LPR, however, the [primary] beneficiary must act within one year" of the "notification of visa availability to complete consular processing (if abroad) or apply for an adjustment of status (if present in the United States)."  Id.

B.  The Child Status Protection Act

        To be considered a "child" for purposes of an F2A family

7

preference visa category, a person must be unmarried and under the age of 21. 8 U.S.C. § 1101(b)(1); see Khalid v. Holder, 655 F.3d 363, 365 n.3 (5th Cir. 2011) (INA "uses the words 'child' or 'children' to describe unmarried persons under 21; once "a 'child' reaches age" 21, he "becomes a 'son' . . . and is no longer a 'child'"). "Due to the long wait times often associated with family preference visas, some aliens who begin the process eligible to immigrate as a child . . . as the primary beneficiary of an F2A petition . . . will 'age out' of eligibility by turning 21 before a visa becomes available." Cuellar de Osorio, 656 F.3d at 957. To alleviate this issue, Congress enacted the Child Status Protection Act ("CSPA"), Pub. L. No. 107-208, 116 Stat. 927 (2002),[3] which amended the INA to "provide age-out protection for aliens who were children (under 21) at the time a petition for permanent resident status was filed on their behalf." Ochoa-Amaya v. Gonzales, 479 F.3d 989, 992 (9th Cir. 2007). The CSPA addressed "the often harsh and arbitrary effects of the age-out provisions under the previously existing statute." Padash v. INS, 358 F.3d 1161, 1173 (9th Cir. 2004).

The CSPA allows alien children to maintain "child" status longer, see 8 U.S.C. § 1153(h)(1), or to automatically convert to

---

[3]   The CSPA is "codified at 8 U.S.C. §§ 1151(f), 1153(h), 1154(a)(1)(D), (k), 1157(c)(2) [and] 1158(b)(3)." Li, 654 F.3d at 378.

a valid adult visa category while retaining the priority date associated with the original petition, see 8 U.S.C. § 1153(h)(3). To do so, the CSPA enacted a formula by which USCIS could allow alien children seeking approval for an F2A visa to maintain "child" status under 8 U.S.C. § 1101(b)(1) as follows:

> (h) Rules for determining whether certain aliens are children
>
> (1) In general
> For purposes of subsections (a)(2)(A) and (d) of this section, a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 1101(b)(1) of this title shall be made using—
>
> (A) the age of the alien on the date on which an immigrant visa number becomes available for such alien (or, in the case of subsection (d) of this section, the date on which an immigrant visa number became available for the alien's parent), but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability; reduced by
>
> (B) the number of days in the period during which the applicable petition described in paragraph (2) was pending . . . .
>
> (3) Retention of priority date
> If the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections (a)(2)(A) and (d) of this section, the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition.

8 U.S.C. § 1153(h).

For example, if an alien child had a "CSPA age" under the

age of 21 according to the above formula, he could maintain

eligibility for an F2A visa even if he was over age 21 at the

time the visa number became available.  If over 21, however, the

CSPA allowed the primary beneficiary to retain the priority date

after the statutory automatic conversion of the petition "to the

appropriate" family preference category.  8 U.S.C. § 1153(h).

The Second Circuit in Li explains the framework as follows, first

noting the two periods of delay which the CSPA addresses:

> As is relevant here, Congress focused on two separate
> periods of delay:  (1) the time between when a citizen or
> LPR sponsor filed a petition and USCIS granted the petition
> (USCIS processing delay); and (2) the time between USCIS's
> grant of the petition and the availability of a visa
> (waiting time because of INA's numerical limits per year).
> For the first delay, Congress provided that the age of the
> immigrant on the date a visa became available would be
> reduced by the number of days the petition was "pending"
> before USCIS (i.e., before the petition was granted or
> denied).  8 U.S.C. § 1153(h)(1).  Thus, if USCIS took three
> years to grant a family petition filed when the child
> beneficiary was 18 and a visa became available one year
> later, the beneficiary would be able to receive the visa as
> a child beneficiary, despite the beneficiary's age (22) at
> the time the visa became available.  For the second delay,
> Congress allowed immigrants whose age remained above 21
> years old after subtracting the period of USCIS processing
> delay to receive the benefit of other preference categories
> for which they were eligible, while retaining their spot in
> line (their priority date).

Li, 654 F.3d at 379.

C.  <u>Plaintiff and Plaintiff's Son</u>

On September 17, 2007, plaintiff, as an LPR of the United

States and resident of Brockton, Massachusetts, filed the visa

petition to bring her son to the United States.  Specifically,

plaintiff filed an I-130 petition thereby establishing a priority

date for the visa petition of September 17, 2007.  See 8 C.F.R. §

204.1(a)(1) (describing I-130 petition for alien relative); see

also 8 C.F.R. § 204.2(d) (describing requirements for petition

for "child or son or daughter" for petition for alien relative).

Born on March 24, 1988, plaintiff's son was 18 years old and a

citizen of Iran at the time his mother filed the visa petition.

(Docket Entry # 2, Ex. A).  On August 20, 2008, the USCIS

approved the visa petition and forwarded it to the National Visa

Center ("NVC") for further consular action.  (Docket Entry # 2,

Ex. K).  The visa petition therefore remained pending with USCIS

for 339 days between the September 17, 2007 filing date and the

August 20, 2008 approval date.  (Docket Entry # 2, Ex. K).

Shortly thereafter, the NVC notified plaintiff and her son

on September 11, 2008, that no visa number was available for

plaintiff's son at the present time.  The September 11, 2008

letter cited the overwhelming demand for visas in excess of

available numbers as the reason for the delay.  (Docket Entry #

2, Ex. A).  In the letter, the NVC also advised plaintiff and her

son that it would notify them if a visa number became available.

(Docket Entry # 2, Ex. A).

On April 30, 2010, the NVC notified plaintiff that a visa

petition for plaintiff's son had arrived at the NVC for processing and payment of application fees. (Docket Entry # 2, Ex. B). Plaintiff hired counsel shortly thereafter in an effort to expedite the process of processing the visa petition. (Docket Entry # 2, Ex. B). By letter dated May 12, 2010, counsel urged the NVC to expedite the application process in light of plaintiff's son's risk of "aging out" under the terms of the CSPA, 8 U.S.C. §§ 1153(a)(2)(A) and (h)(1).[4] (Docket Entry # 2, Ex. C). The NVC contacted counsel shortly thereafter on May 26, 2010, to request he coordinate payment of the required fees. Plaintiff paid the fees and on July 27, 2010, counsel submitted all additional, required documentation to the NVC. (Docket Entry # 2, Ex. F).

A visa number first became available for plaintiff's son on June 1, 2010. At that time, however, plaintiff's son was 22 years and 70 days old which equated to a CSPA age of 21 years and 96 days old. (Docket Entry # 2, Ex. J). In fact, plaintiff's son aged out of eligibility for an F2A visa in February 2010.

On January 3, 2011, the NVC sent plaintiff's son a letter advising him it had completed processing the application for the visa petition and forwarded it to the United States Embassy in Abu Dhabi ("the Embassy"). The letter also informed plaintiff's

---

[4] As discussed below, however, plaintiff's son had already aged out of the F2A family preference category.

son of the scheduling of an interview on February 6, 2011, at the Embassy. Plaintiff's son's "parents" paid $15,000 to temporarily relieve him of his military service in Iran in order to attend the interview in Abu Dhabi. The interview took place on February 6, 2011, and on the same day an American consular officer ("the officer") determined that plaintiff's son was no longer eligible for an F2A visa for which he had initially applied. (Docket Entry # 2, ¶¶ 23-25 & Ex. H). The officer informed plaintiff's son that his eligibility was therefore transferred to an F2B visa category and that his priority date of September 17, 2007, was not yet "current" to process. (Docket Entry # 2, Ex. G). The F2B visa category changed the "child" status of plaintiff's son associated with section 1153(a)(2)(A) to an "unmarried son[]" status associated with section 1153(a)(2)(B). Put another way, reclassification of plaintiff's son to the F2B visa category meant he became classified as an "unmarried son[]" of an alien lawfully admitted for permanent resident but no longer qualified as a "child" for purposes of preferential treatment under the CSPA. See 8 U.S.C. § 1153(a)(2)(B) (outlining "qualified immigrants" as "unmarried sons or unmarried daughters" of permanent residents); 8 U.S.C. § 1153(h)(3) (aliens who age out of "children" classification will be automatically converted to "appropriate category" and retain original priority date).

In an email three days after the February 6, 2011 interview,

an official in the consular section of the Embassy explained to
counsel that plaintiff's son was ineligible because his "CSPA
age was over 21." (Docket Entry # 2, Ex. J). An email to counsel
eight days later on February 17, 2011, from LegalNet, a State
Department advisory group, clarified that plaintiff's son's CSPA
age was over the 21 year maximum age at the time the F2A visa
number became available on June 1, 2010. (Docket Entry # 2, Ex.
J). The email explained that calculating plaintiff's son's CSPA
age required the officer to deduct the period of time (339 days)
that the visa petition was pending before the USCIS from the
actual age of plaintiff's son (22 years and 70 days). See 8
U.S.C. § 1153(h)(1); (Docket Entry # 2, Ex. J). Subtracting the
339 days from plaintiff's son's age the day the F2A visa number
became available (22 years and 70 days old) resulted in a CSPA
age of 21 years and 96 days. (Docket Entry # 2, Ex. J). As
such, he exceeded the statutory age of a "child" within the
meaning of the INA, 8 U.S.C. §§ 1101(b)(1) and 1153(a)(2)(A), as
modified by the CSPA, 8 U.S.C. § 1153(h). (Docket Entry # 2, Ex.
K). Simply put, under the terms of the INA, see 8 U.S.C. §
1153(a)(2)(A) and (B), plaintiff's son could not qualify for an
F2A visa because he was not considered a "child . . . under
twenty-one years of age." 8 U.S.C. § 1101(b)(1).

After the reclassification of plaintiff's son to the F2B

visa category and the denial of his petition for an F2A visa, plaintiff filed this action on April 27, 2011, seeking a declaratory judgment and relief pursuant to 28 U.S.C. §§ 1331 and 1361. (Docket Entry # 2). Plaintiff seeks to compel defendant to "correctly adjudicate her son's immigrant visa, which he fully qualifies for." (Docket Entry # 2, p. 3). Defendant moves to dismiss the claims for lack of subject matter jurisdiction under Rule 12(b)(1), Fed. R. Civ. P. ("Rule 12(b)(1)"), and for failure to state a claim for relief under Rule 12(b)(6), Fed. R. Civ. P. ("Rule 12(b)(6)").

## DISCUSSION

A. <u>Subject Matter Jurisdiction</u>

    1. <u>Standard of Review</u>

In a ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court must construe the complaint liberally, treat all well pleaded facts as true and indulge all reasonable inferences in favor of the plaintiff. <u>See</u> <u>Aversa v. United States</u>, 99 F.3d 1200, 1209-10 (1st Cir. 1996); <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995). "A plaintiff, however, may not rest merely on unsupported conclusions or interpretations of law. Subjective characterizations or conclusory descriptions of a general scenario which *could* be dominated by unpleaded facts will not

defeat a motion to dismiss." Murphy, 45 F.3d at 522 (emphasis in original; internal brackets, citations and internal quotation marks omitted).

The plaintiff bears the burden of proving the court has subject matter jurisdiction over the claims in the complaint. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Aversa, 99 F.3d at 1209; Murphy, 45 F.3d at 522. Specifically, "Once challenged, 'the party invoking subject matter jurisdiction . . . has the burden of proving by a preponderance of the evidence the facts supporting the jurisdiction.'" Padilla-Manqual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008). In addition to the well pleaded facts in the complaint, a court ruling on a Rule 12(b)(1) motion "'may consider whatever evidence has been submitted, such as depositions and exhibits.'" Carroll v. United States, 661 F.3d 87, 94 (1st Cir. 2011) (quoting Aversa, 99 F.3d at 1209–10.

2. Analysis

In no area is the scope of judicial inquiry more limited than the area of immigration legislation. See Fiallo v. Bell, 430 U.S. 787, 792 (1977); Oceanic Navigation Co. v. Stranahan, 214 U.S. 320, 339 (1909). The Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercise by the Government's political departments largely immune from judicial control." Shaughnessy v. Mezei, 345

U.S. 206, 210 (1953); see also Fiallo, 430 U.S. at 792; The Chinese Exclusion Case, 130 U.S. 581 (1889).  "The political character of this intrinsically executive function renders it 'subject only to narrow judicial review.'"  Adams v. Baker, 909 F.2d 643, 647 (1st Cir. 1990) (quoting Hampton v. Mow Sun Wong, 426 U.S. 88, 101 n.21 (1976) (citing Fong Yue Ting v. United States, 149 U.S. 698, 713 (1893)).  "Judicial deference to the Executive Branch is especially appropriate in the immigration context."  INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999); see Zhang v. Slattery, 55 F.3d 732, 748 (2nd Cir. 1995) ("it is not the role of the federal courts to administer the executive branch" in the area of immigration).

   The right to exclude aliens "stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation."  United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 542 (1950).  "Any policy towards aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government.  Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."  Harisades v. Shaughnessy, 342 U.S. 580, 588-89 (1952).

   In the case at bar, plaintiff relies on the following

statutes as a basis for the court to exercise jurisdiction over the claims in the complaint: (1) 28 U.S.C. § 1331 ("section 1331") providing jurisdiction for questions of federal law; (2) the Mandamus and Venue Act, 28 U.S.C. § 1361 ("the MVA"); and (3) the Administrative Procedures Act, 5 U.S.C. § 704 ("the APA"). Plaintiff also cites the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, as additional support for the exercise of jurisdiction. Defendant submits these statutes do not provide a sufficient basis for the court's exercise of jurisdiction.

(A) <u>Subject Matter Jurisdiction under the MVA</u>

Plaintiff maintains that the MVA affords subject matter jurisdiction to issue a writ of mandamus to compel defendant to properly adjudicate her son's visa petition. Plaintiff further argues that mandamus should issue because her son's visa petition failed to meet the statutory requirements of the CSPA solely due to the State Department's unreasonable delay in assigning a visa number to her son. Plaintiff additionally contends that, notwithstanding section 279 of the INA, 8 U.S.C. § 1329, this court has subject matter jurisdiction to review her claims by virtue of the MVA, which grants federal courts original jurisdiction over acts of mandamus. <u>See</u> 8 U.S.C. § 1361; <u>see also</u> 8 U.S.C. § 1329.

The MVA vests federal courts with original jurisdiction over any action "in the nature of mandamus to compel an officer or

employee of the United States or agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. 1361; see also Morgovsky v. Dep't of Homeland Security, 517 F.Supp.2d 581, 584 (D.Mass. 2007). District courts may issue writs of mandamus, however, "only where the duty to be performed is ministerial and the obligation to act peremptory and clearly defined." United States ex. rel. McLennan v. Wilbur, 283 U.S. 414, 420 (1931). "The law must not only authorize the demanded action, but require it; the duty to act must be clear and undisputable." Id. Because of the potential conflict created by the use of this remedy by the judicial branch, federal courts restrict its application to "only . . . the clearest and most compelling cases." 13th Reg'l Corp. v. Dep't of the Interior, 654 F.2d 758, 760 (D.C.Cir. 1980).

Courts reserve the extraordinary remedy of mandamus only for those situations in which the agency or official has failed to act (or has acted) in disregard of a clearly defined legal duty and where the plaintiff has no conventional means for review of the failure to act, such as the APA. See Pittson Coal Group v. Sebben, 488 U.S. 105, 121 (1988); see also Whitehouse v. Illinois Cent. R.R. Co., 349 U.S. 366, 373 (1955); In re City of Fall River, 470 F.3d 30, 32 (1st Cir. 2006). To be entitled to mandamus relief, the party seeking mandamus must show that: (1) his claim is clear and certain; (2) the official's duty to act is nondiscretionary, ministerial and so plainly prescribed as to be

free from doubt; and (3) no other adequate remedy is available.
See Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35
(1980) (party seeking mandamus relief must show "clear and
indisputable" right and have no other adequate remedy); In re
City of Fall River, 470 F.3d at 32; see also Morgovsky, 517
F.Supp.2d at 584; accord In re Bluewater Network & Ocean
Advocates, 234 F.3d 1305, 1315 (D.C.Cir. 2000).

The exercise of the power of mandamus is a matter committed
to the sound discretion of the trial court.  See Whitehouse, 349
U.S. at 373; see also 13th Reg'l Corp, 654 F.2d at 760.
Equitable considerations govern the issuance of mandamus and a
court may, in the exercise of its discretion, refuse to grant
declaratory relief if alternative remedies exist and are more
effective than mandamus.  See Whitehouse, 349 U.S. at 373;
Cartier v. Secretary of State, 506 F.2d 191, 1999 (D.C.Cir.
1974); see also 13th Reg'l Corp., 654 F.2d at 760 ("the case must
be found by a court to be clear and compelling on both legal and
equitable grounds for a writ to issue").  Alternative remedies to
mandamus may encompass both judicial and administrative remedies.
Cartier, 506 F.2d at 197.  Whether the statute at issue created a
ministerial duty subject to mandamus is a question of statutory
interpretation.  13th Reg'l Corp., 654 F.2d at 760.

Turning to the INA, which governs visa processing, see
Saavedra Bruno v. Albright, 197 F.3d 1153, 1156 (D.C.Cir. 1999)

(INA governs visa processing), its terms do not confer a nondiscretionary, ministerial duty on the consular official. To the contrary, the plain and ordinary terms of the INA confer full authority and discretion on the consular official to grant or deny the applicant's petition for an immigration visa. See 8 U.S.C. §§ 1104(a) and 1201(a). First, the terms of the INA state that consular officers "*may* issue [an immigrant visa] to an immigrant who has made proper application thereof." 8 U.S.C. § 1201(a)(1) (emphasis added). Second, the INA empowers consular officers to grant visas to alien immigrants upon proper application, unless the consular officer "knows or has reason to believe that such alien is ineligible to receive a visa . . . under section 1182 of this title or any other provision of law." 8 U.S.C. § 1201(g)(3). Although the INA delegates general visa documentation duties to the State Department, it also places the consular official's determination to grant or deny the application outside the review of the Secretary of State as follows:

> The Secretary of State shall be charged with the administration and enforcement of the provisions and chapters and all other immigration and nationality laws relating to (1) the powers, duties and functions of diplomatic and consular officers of the United States, *except those powers, duties and functions conferred upon the consular officers relating to the granting or refusal of visas* . . .

8 U.S.C. § 1104(a)(1) (emphasis added). Accordingly, the Secretary of State cannot review a consular officer's factual

decision to grant or deny a visa under the terms of the statute. Id.; Adams, 909 F.2d at 649 ("factual determinations made by consular officers in the visa issuance process are not subject to review by the Secretary of State"); accord Chiang v. Skeirik, 582 F.3d 238, 243 n.6 (1st Cir. 2009) (quoting Adams, 909 F.2d at 649). In addition, the statutes and regulations provide consular officials considerable discretion in granting or denying a visa and do not establish a time limit to act on a petition. See 8 U.S.C. § 1201(g); 22 C.F.R. § 42.43. Obtaining a visa merely gives the alien permission to arrive at a port of entry and have an immigration officer independently examine the alien's eligibility for admission; it does not guarantee an alien's entry into the United States. Saavedra-Bruno, 197 F.3d at 1157.

It is true that a number of courts exercise jurisdiction to review claims of *inaction* on behalf of government officials regarding the processing of immigration petitions. See, e.g., Litvin v. Chertoff, 586 F.Supp.2d 9, 11 (D.Mass. 2008); King v. Office for Civil Rights, 573 F.Supp.2d 425, 429 n.2 (D.Mass. 2008) (citing Independence Mining Co. v. Babbitt, 105 F.3d 502, 507 (9th Cir. 1997)); Tang v. Chertoff, 493 F.Supp.2d 148, 154 (D.Mass. 2007); Morgovsky, 517 F.Supp.2d at 584; Vorontsova v. Chertoff, 2007 WL 3238026, at *3 (D.Mass. Nov. 2, 2007). Plaintiff, however, does not seek judicial review of a claim of inaction on behalf of defendant except in the context of an

alleged unreasonable delay.[5]  Rather, she seeks review of a
decision committed to the discretion of the official under the
laws and regulations of the United States.  As set forth in the
complaint, plaintiff seeks to "compel the defendant to *correctly
adjudicate*" plaintiff's son's visa petition under the CSPA
language.  (Docket Entry # 2) (emphasis added)).  Plaintiff seeks
relief not to compel an unresponsive agency to act on a delayed
petition, but specifically requests this court to insert itself
into the decision making of the State Department and order it to
change the legally justified denial of the visa petition.
Moreover, the officer's action does not constitute a ministerial
duty under the MVA.  Rather, it involved a discretionary action
by a consular official review of which is inappropriate under the
MVA.

In short, the language of the request and the discretionary
nature of the decision afforded under the INA belie the existence
of subject matter jurisdiction under the MVA.  Plaintiff
therefore cannot use a mandamus action to compel the State
Department to make a specific decision regarding her son's
petition, especially where the official has in fact acted upon
the petition and issued a decision pursuant to a federal statute.
The mere fact that the official's decision did not satisfy

_____

[5]  The alleged unreasonable delay and "duty to timely"
adjudicate the visa petition is addressed infra.

plaintiff or that the consequences of plaintiff's son's aging out under the terms of CSPA is unsatisfactory to her does not empower this court to intrude upon an area committed to the official's discretion.

Finally, bare assertions in the complaint that defendant and consular officials breached duties to act in good faith, to not act in a tortious manner and to "not recklessly behave toward those a consulate comes into contact" (Docket Entry # 15) likewise fail to establish subject matter jurisdiction under the MVA. Mandamus is warranted only when an official's duty to act is ministerial and plainly prescribed as free from doubt. In the circumstances of this case, the duty to act in good faith and to avoid reckless behavior do not constitute such plainly prescribed or "clear and undisputable" duties.[6] See United States ex. rel. McLennan, 283 U.S. at 420; 13th Reg'l Corp., 654 F.2d at 760. Accordingly, mandamus under the MVA is not an available basis for the exercise of subject matter jurisdiction. See, e.g., Azurin v. Von Raab, 803 F.2d 993, 995 (9th Cir. 1986).

(B) The APA

Plaintiff also argues that the APA creates jurisdiction because it provides that, "A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by

---

[6] As discussed below, the same reasons demonstrate the futility of the proposed "new" claims in the motion to amend.

agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Defendant submits that the APA does not create subject matter jurisdiction over the claims at bar.

The APA creates standards of judicial review to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C § 706(1); see also Brock v. Pierce County, 476 U.S. 253, 260 (1986) (APA permits district court to compel agency action). It does not, however, "afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." Califano v. Sanders, 430 U.S. 99, 107 (1977); see also United States v. Park Place Assocs., Ltd., 563 F.3d 907, 929 n.15 (9th Cir. 2009) ("APA does not provide an independent basis for subject matter jurisdiction in the federal courts"); Jordan Hosp., Inc. v. Shalala, 276 F.3d 72, 77 n.4 (1st Cir. 2002).

Specifically, "the APA does not provide a federal court with any independent basis for jurisdiction. Rather, the APA prescribes standards for judicial review of an agency action, *once jurisdiction is otherwise established*." Michigan Dep't of Envtl. Quality v. U.S. EPA, 318 F.3d 705, 709 (6th Cir. 2003) (internal citations omitted; emphasis added); accord Cervoni v. Sec'y of Health, Educ. & Welfare, 581 F.2d 1010, 1015 (1st Cir. 1978) (citing Califano, 430 U.S. at 105). The standards imposed on federal courts under the APA when conducting judicial review

of agency action only apply to causes of action where the plaintiff has previously established jurisdiction.  <u>See</u> <u>Conservation Law Found., Inc. v. Busey</u>, 79 F.3d 1250, 1261 (1<sub>st</sub> Cir. 1996) (while "APA does not provide an independent source of subject matter jurisdiction, it does provide a federal right of action where subject matter jurisdiction exists"); <u>see</u>, <u>e.g.</u>, <u>Okpoko v. Heinauer</u>, 796 F.Supp.2d 305, 315 (D.R.I. 2011) (refusing to exercise jurisdiction under APA to review agency's denial of the plaintiff asylee's petition for wife because APA did not confer jurisdiction alone).  Moreover, as noted by the Supreme Court in <u>Ardestani</u>, "Congress intended the provisions of the Immigration and Nationality Act . . . to supplant the APA in immigration proceedings."  <u>Ardestani v. INS</u>, 502 U.S. 129, 133 (1991); <u>accord</u> <u>Hamdi v. Napolitano</u>, 620 F.3d 615, 623 (6th Cir. 2010) (same); <u>see</u>, <u>e.g.</u>, <u>Ngassam v. Chertoff</u>, 590 F.Supp.2d 461, 465 (S.D.N.Y. 2008) ("APA does not provide a 'federal question' basis for jurisdiction for this court to review USCIS's denial of plaintiff's petitions").

The APA itself provides that, "Nothing herein . . . affects other limitations on judicial review of the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground," 5 U.S.C. § 702(1), which includes the doctrine of consular nonreviewability discussed in the next section.  <u>See</u> <u>American Sociological Ass'n v. Chertoff</u>,

588 F.Supp.2d 166, 174 (D.Mass. 2008) (review of visa denial foreclosed upon under APA due to doctrine of consular nonreviewability).  When examining the decision of an agency official, the APA additionally states that it does not apply where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).  Here, as discussed above, the consular officer's denial of the visa petition constitutes an act committed to agency discretion under the INA.  See 8 U.S.C. § 1104(a) (stating all "powers, duties and functions" relating to the granting or refusal of visas is committed to consular officers); 8 U.S.C. § 1201(g)(1) (stating "no visa . . . shall be issued to an alien if (1) it appears to the consular officer . . . that such alien is ineligible to receive a visa or other such documentation under section 1182 of this title, or any other provision of law"); 8 U.S.C. § 1201(g)(3) (stating "no visa . . . shall be issued to an alien if . . . (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law"); see also 22 C.F.R. § 40.6 (stating "a visa can be refused only upon a ground specifically set out in the law or implementing regulations").

The APA does establish, however, that under its terms a court is authorized to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706.  While the APA does

not create subject matter jurisdiction by itself, federal courts can utilize the APA in conjunction with other statutes, such as section 1331, to give the court jurisdiction to compel action from a government agency unlawfully withheld or unreasonably delayed.  See <u>Norton v. Couth Utah Wilderness Alliance</u>, 542 U.S. 55, 64 (2004); see also <u>Idaho Watersheds Project v. Hahn</u>, 307 F.3d 815, 830 (9th Cir. 2002).

Courts in this circuit and others therefore construe the APA and the MVA to be coextensive to the extent that the APA creates a nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay.  See <u>Litvin</u>, 586 F.Supp.2d at 11; <u>Tang</u>, 493 F.Supp.2d at 154; <u>Morgovsky</u>, 517 F.Supp.2d at 584; <u>see also</u> <u>King</u>, 573 F.Supp.2d at 429 n.2 (citing <u>Indep. Mining Co. v. Babbitt</u>, 105 F.3d 502, 507 (9th Cir. 1997)); <u>Vorontsova</u>, 2007 WL 3238026, at *3.  Delays in processing applications for visa or naturalization involve a nondiscretionary act because "at some level, the government has a general non-discretionary duty to process the applications in the first place."  See <u>Indep. Mining Co.</u>, 105 F.3d at 507 n.6.  Thus, for a plaintiff to establish jurisdiction under both the APA and the MVA, the plaintiff must assert that the relevant agency "failed to take a discrete agency action that it is required to take," <u>Norton v. Southern Utah Wilderness Alliance</u>, 542 U.S. 55, 64 (2004), which in this instance would be to act upon the visa

petition without unreasonable delay.  See Litvin, 586 F.Supp.2d
at 11-13 (stating the plaintiff can assert jurisdiction under APA
and MVA because government has nondiscretionary duty to act upon
applications by processing them).  In particular, the government
does not have the discretion to delay adjudication of a visa
petition for an unreasonable length of time.  See Litvin, 586
F.Supp.2d at 11; see also Tang, 493 F.Supp.2d at 148 (court had
subject matter jurisdiction to compel USCIS to adjudicate the
plaintiff's application for adjustment of immigration status
after delay of nearly four years).

     As previously explained, plaintiff cannot establish the
existence of a nondiscretionary duty that defendant failed to
take that would create subject matter jurisdiction under the MVA,
28 U.S.C. § 1361.  Because of this failure, the invocation of
jurisdiction is similarly inappropriate under section 1331 and
the APA.  Plaintiff cannot use the APA to independently create
such jurisdiction.  As previously discussed, discretionary
decisions to grant or deny a visa petition fall within the scope
of authority protected by the provisions of the INA and outside
the scope of review created by the MVA and the APA.

     In the alternative, even if this court assumed dubiante that
plaintiff established a nondiscretionary duty subject to the
terms of the MVA, plaintiff fails to establish that defendant
unreasonably delayed in acting upon her son's visa petition.

Where, as here, the agency could not process the petition after the August 20, 2008 USCIS approval due to the lack of "immigrant visa numbers available under the limitations prescribed by law" (Docket Entry # 2, Ex. A), and it acted on the visa petition once a number became available on June 1, 2010, this is not a case to compel an agency to act where it had a legal duty to act and where it unreasonably delayed such action.

It is also worth noting that, by the time the visa number became available on June 1, 2010, plaintiff's son had "aged out" under the terms of the CSPA, 8 U.S.C. § 1153(h)(1), and was no longer eligible for an F2A visa. (Docket # 2, Ex. J). Indeed, plaintiff's son aged out on or about February 25, 2010, because his CSPA age on June 1, 2010, was 21 years and 96 days old. (Docket Entry # 2, Ex. A & J). The delay in a visa number becoming available for plaintiff's son was the result of the fact that each year the State Department receives a far greater number of petitions for visas than are visas available. (Docket # 2, Ex. A). Delays in assignment of a visa number for plaintiff's son arose from an excessive amount of applications for visas in the F2A category, not from delays on the part of defendant. (Docket # 2, Ex. A). Here, defendant took a number of steps to approve the visa petition and after August 2008 awaited the availability of a visa number due to the excess number of visa applicants for available visa numbers. (Docket Entry # 2, Ex.

30

A).  Unlike cases in which the USCIS or other agency failed to act on a plaintiff's petition for immigration for an unreasonable period of time, this case involves an agency taking action and thereafter awaiting the availability of a visa number as prescribed under a statutory cap.  Plaintiff therefore fails to show she has been aggrieved by an adverse agency action or an unreasonable delay.

In sum, exercise of jurisdiction under the MVA and the APA is not appropriate.  Alternatively, there was no unreasonable delay and plaintiff's disagreement with the decision itself does not provide such jurisdiction for failure to establish a nondiscretionary duty.

(C) Doctrine of Consular Nonreviewability

Defendant submits that the doctrine of consular nonreviewability bars this mandamus action.  Plaintiff disagrees.

The common law doctrine of consular nonreviewability declares that irrespective of jurisdictional statutes or in the absence of constitutional issues, immigration disputes generally fall outside the jurisdiction of federal district courts.  See Chiang v. Skeirik, 582 F.3d 238, 242 (1st Cir. 2009).  Thus, "[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien."  United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 543 (1950).

"The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come into this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications." Kleindeinst v. Mandel, 408 U.S. 753, 766 (1972) (citing Lem Moon Sing v. United States, 158 U.S. 538, 547 (1895)).

In the context of visa denials, federal courts refer to this level of deference for both political branches of government as the "doctrine of consular nonreviewability." See Saavedra Bruno, 197 F.3d at 1159-60 (doctrine applies because of "political nature of visa determinations and of the lack of any statute expressly authorizing judicial review of consular officers' actions"); Li Hing of Hong Kong, Inc. v. Levin, 800 F.2d 970, 971 (9th Cir. 1986) ("it has been consistently held that the consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review"); see also American Sociological Ass'n v. Chertoff, 588 F.Supp.2d 166, 169 (D.Mass. 2008) (recognizing doctrine of consular nonreviewability generally applies to judicial review of visa determinations in this district with one exception).[7]  The doctrine recognizes that

---

[7]  The exception, discussed infra, involves a denial of constitutional rights without any facially legitimate and bona fide reason.  See Kleindeinst, 408 U.S. at 770.

"the power to exclude aliens" is "'"inherent in sovereignty,

necessary for maintaining normal international relations and

defending the country against foreign encroachments and dangers-a

power to be exercised exclusively by the political branches of

government."'" Saavedra Bruno v. Albright, 197 F.3d at 1159

(citing The Chinese Exclusion Case, 130 U.S. at 609).

"In view of the political nature of visa determinations and

of the lack of any statute expressly authorizing judicial review

of consular officers' actions," courts adhere to the view that

"consular visa determinations are not subject to judicial

review." Saavedra Bruno, 197 F.3d at 1159-60 (collecting cases);

see also Fiallo v. Bell, 430 U.S. 787, 792 (1977) ("[o]ur cases

'have long recognized the power to expel or exclude aliens as a

fundamental sovereign attribute exercised by the Government's

political departments largely immune from judicial control'");

Garcia v. Baker, 765 F.Supp. 426, 428 (N.D.Ill. 1990) (courts

consistently uphold doctrine's viability and reject attacks on

consular decisions regardless of the form the decisions take).

Indeed, as noted in Doan, "Courts will not review the decisions

of consular officers even where those decisions are based on

action unauthorized by the INA, on procedural irregularities or

on errors of law." Doan v. I.N.S., 990 F.Supp. 744, 746-47

(E.D.Mo. 1997) (citations omitted); see also Garcia, 765 F.Supp.

at 428.

Courts are also hesitant to recognize exceptions to the doctrine as applied to the review of discretionary visa determinations by consular officials. See American Sociological Ass'n, 588 F.Supp.2d at 169. That said, one such limited exception may exist when a consular official's denial of a visa petition infringes upon a constitutional right of an American citizen. See Kleindeinst, 408 U.S. at 770 (exercising judicial review over denial of visa when alleged constitutional violations of the First Amendment occurred); see also American Sociological Ass'n, 588 F.Supp.2d at 169 (noting Supreme Court implicitly recognized that in some circumstances a denial of a visa might be subject to judicial review). In creating this implied and limited exception to the bar on judicial review of visa denials, the Supreme Court in Kleindeinst further restricted the scope of such review by stating:

> When the Executive exercises [the power to grant or deny a visa] negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the [constitutional rights of those claiming to be aggrieved by the consular official's denial].

Kleindeinst, 408 U.S. at 770. Put another way, the executive branch's power to exclude an alien is unreviewable under the doctrine of consular nonreviewability when the visa denial is done "on the basis of a facially legitimate and bona fide reason," even if exclusion might impair the constitutionally protected interests of United States' citizens. Id.; American

34

Sociological Ass'n, 588 F.Supp.2d at 170; see also Adams, 909 F.2d at 649 (rejecting the plaintiff's claim that denial of visa was improper because State Department reasonably concluded that applicant participated in terrorist activities); Allende, 845 F.2d at 1112-13 (rejecting the plaintiff's claim that denial of visa was improper because State Department reasonably concluded that applicant "advocate[d] communism or [was] affiliated with communist organizations"). Consequently, once the government gives a "facially legitimate and bona fide reason" for the denial of an applicant's visa petition, further review of the denial is neither necessary nor appropriate. American Sociological Ass'n, 588 F.Supp.2d at 172 (citing Kleindeinst, 408 U.S. at 770).

Absent this limited exception for claims raising constitutional issues concerning visa denials, "nonconstitutional issues are generally outside the jurisdiction of the courts." Chiang, 582 F.3d at 242; see also Adams, 909 F.2d at 649 (absent "statutory authorization or mandate from Congress, factual determinations made by consular officers in the visa issuance process are not subject to review by the Secretary of State and are not similarly reviewable by courts") (internal citations omitted); cf. Saavedra Bruno, 197 F.3d at 1162-63 (consular nonreviewability doctrine "holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise"). Moreover,

Congress' amendment to the INA with the passage of the CSPA did nothing to restrict the doctrine of consular nonreviewability as it applied to consular official's decisions based upon "facially legitimate and bona fide reason[s]." Chen v. Rice, 2008 WL 2944878, at *7 (E.D.Pa. July 28, 2008) (enactment of CSPA did not change discretion granted to consular officials to deny visas or make those discretionary actions subject to judicial review).

Analysis of the APA's language likewise shows that consular nonreviewability stands as one of the limited exceptions to review under 5 U.S.C. § 702 ("section 702"). See Saavedra, 197 F.3d at 1157-58; 5 U.S.C. § 702 ("a person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial thereof"); cf. 5 U.S.C. § 701(a)(1)-(2) (prohibiting exercise of jurisdiction over claims if "statutes preclude judicial review" or if "agency action is committed to agency discretion by law"). Section 702(1) states that, "*Nothing herein* (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground." 5 U.S.C. § 702(1) (emphasis added); see also H.R.Rep. No. 94-1656, at 9 (1976) (noting that the bill "is not intended to affect or change defenses other than sovereign immunity" and that such intent "is made clear by clause (1)" of section 702); accord Chen v. Rice, 2008 WL 2944878, *5

36

(E.D.Pa. July 28, 2008) (quoting H.R.Rep. No. 94-1656, at 12 (1976)). Courts construe the language of section 702(1) as adopting the doctrine of consular nonreviewability as one of the "other limitations" on judicial review within the meaning of section 702(1) because of the doctrine's historical underpinnings and because it predated the passage of the APA and the amendment of section 702. See Saavedra, 197 F.3d at 1160 (interpreting section 702(1) to incorporate doctrine of consular nonreviewability); see also Chen, 2008 WL 2944878, at *5 ("doctrine of consular nonreviewability qualifies under . . . § 702(1) to preclude the court's review of consular visa decisions"). The doctrine therefore bars judicial review of claims seeking to review the decision of a matter committed to an agency's discretion even in light of the APA's presumption of judicial review. See Saavedra, 197 F.3d at 1160.

In the case at bar, plaintiff fails to allege the kind of constitutional violation that may be considered under the limited exception to the doctrine of consular nonreviewability. Defendant accurately points out that by the time plaintiff's son became eligible for a visa, he had aged out of the F2A family preference category for an F2A visa under the terms of the CSPA. See 8 U.S.C. § 1153(h)(1) (stating rules for determining whether certain aliens are children for purposes of F2A family preference category). Because plaintiff's son could not be considered

eligible for a visa under the F2A family preference category for which he applied, defendant's reason to deny the visa petition constitutes a facially legitimate and bona fide reason. <u>See</u> <u>Kleindeinst</u>, 408 U.S. at 770. As such, this court declines to look past the exercise of the discretion afforded consular officers and seek to "correctly adjudicate" the visa petition as plaintiff requests (Docket Entry # 2).

Plaintiff attempts to avoid the doctrine's applicability by arguing that the consular official committed a tortious act against plaintiff's son by scheduling an interview in Abu Dhabi after he had already "aged out." As previously explained, however, a "procedural irregularity," such as scheduling an interview even though the primary beneficiary was no longer eligible for the family preference category for which he applied, does not overcome the doctrine's application. <u>See</u> <u>Doan v.</u> <u>I.N.S.,</u> 990 F.Supp. at 746-747. Indeed, section 1153(h) contemplates a change in family preference category and instructs the consular official to convert the petition to the appropriate category which, in the case at bar, is an F2B family preference category.[8] Likewise, the scheduling of the interview and the

_____

[8] Section 1153(h)(3) reads:

(3) Retention of priority date

If the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections

38

resulting expenditure of $15,000 by plaintiff's son's parents does not rise to the level of a constitutional violation.  <u>See</u> <u>Chiang</u>, 582 F.3d at 242 ("nonconstitutional issues are generally outside the jurisdiction of the courts").

Here, it is incumbent upon this court to defer to the determinations of the executive and legislative branches of government and uphold the principle that immigration policy is "enforced exclusively through executive officers, without judicial intervention."  <u>Kleindeinst</u>, 408 U.S. at 765-766 (citing <u>Lem Moon Sing</u>, 158 U.S. at 547).  Congress delegated the discretion to issue and withhold visas to consular officials subject to the conditions and limitations prescribed in the relevant statute and regulations.  <u>See</u> 8 U.S.C. §§ 1201(a)(1) & 1201(g).  This court must afford the consular official wide discretion in denying the visa petition, even though defendant's decision has an adverse impact upon her son's ability to immigrate to the United States.  Under section 1201(g), a consular official must refuse to issue the visa if it "appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under . . . any provision of law."  8 U.S.C.

(a)(2)(A) and (d) of this section, the alien's petition
shall automatically be converted to the appropriate category
and the alien shall retain the original priority date issued
upon receipt of the original petition.

8 U.S.C. § 1153(h)(3).

§ 1201(g).  Because of the discretion afforded consular visa determinations and the facially legitimate and bona fide reason for the denial of the visa petition, the doctrine of consular nonreviewability precludes plaintiff's claims even if this court had subject matter jurisdiction.[9]

B.  Motion for Leave to Amend

Plaintiff seeks to amend the original complaint by adding additional facts and three new counts against defendant, to wit, negligence, negligent infliction of emotional distress and misrepresentation.  (Docket Entry # 16).  Defendant submits the proposed claims are futile.  (Docket Entry # 17).

It is well settled that futility constitutes an adequate basis to deny amendment.  See Universal Communications Systems, Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007); Maine State Building and Construction Trades Council, AFL CIO v. United States Department of Labor, 359 F.3d 14, 19 (1st Cir. 2004).  "An amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss."  Menard v. CSX Transp., Inc., 2012 WL 13372, *5 (D.Mass. Jan. 3, 2012).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include factual allegations that when taken as true demonstrate a plausible claim to relief even if actual proof of

---

[9]  In light of the foregoing determinations, it is not necessary to address defendant's remaining arguments.

the facts is improbable.  See Bell Atlantic v. Twombly, 550 U.S. 544, 555-558 (2007); see, e.g., Kenney v. State Street Corp., 2011 WL 4344452, *2 (D.Mass. Sept. 15, 2011) (applying Rule 12(b)(6) Twombly standard in assessing futility of proposed amendment).  Thus, while "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully."  Boroian v. Mueller, 616 F.3d 60, 65 (1st Cir. 2010) (internal quotation marks omitted).  "[A]ccepting as true all well-pleaded facts in the complaint and making all reasonable inferences in the plaintiff's favor," id. at 64, the "factual allegations 'must be enough to raise a right to relief above the speculative level.'" Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010).

Turning to the proposed negligence and negligent infliction of emotional distress claims, the "new" facts, taken as true for present purposes, state the following:

> [W]hen [defendant] sent the Beneficiary the appointment letter, he had already "aged out."  Yet, she sent the Plaintiff an interview notice, requiring the Plaintiff's son to fly to another country in order to appear at an interview.  She knew full well that Iranians were required to travel to the United Arab Emirates, where the U.S. Consulate is located.  She knew or should have known, by a reasonable person standard, that this would require expenditure, as well as time, and much effort to attend the appointment.  She knew or she should have known that this would cause an undue hardship on the Beneficiary as well as his family in U.S.  Defendant has also implicitly admitted that her organization, not the Plaintiff caused the delay, which bore unfavorable results for Plaintiff.
>
> Moreover, the Plaintiff's son, a young male, was required to

41

report for military service.  Until he completed his
service, he was not allowed to leave the country (Iran).
Once the Beneficiary received the Appointment Letter
(Exhibit G), he knew that he had to leave the country.  In
order to do so, his family had to engage several key
officials in Iran in order to obtain a temporary exit
permit.  The cost was upwards of $15,000.00.  Aside from his
travel expenses, the Beneficiary has been incurring at least
$120.00 per day for his hotel and other expenses.

(Docket Entry # 16, ¶ 8).

In short, plaintiff alleges that defendant breached a duty
of care owed to her not to inflict financial harm and
defendant knew or should have known that plaintiff's son did not
qualify for an F2A visa when the visa number became available in
June 2010.  (Docket # 16, p. 3).  By scheduling the interview at
a time when defendant knew or should have known that plaintiff's
son was no longer eligible for an F2A visa, defendant breached
the duty of care owed to plaintiff.  Defendant also breached a
duty to disclose to plaintiff at the outset of the process
whether her son "minimally qualified for an immigrant visa."
(Docket Entry # 16, ¶ 38).  As set forth in the proposed
amendment, because of defendant's actions and failure to act,
defendant negligently inflicted emotional distress upon plaintiff
which manifests itself through high anxiety, depression and
sleepless nights.  (Docket Entry # 16, p. 4).

Both proposed negligence claims, however, arise from the
actions of consular officials in scheduling the interview even
though plaintiff's son had already aged out of the F2A family

preference category.  Plaintiff seeks to impose a duty upon consular officials to make a preliminary determination of a primary beneficiary's qualifications for the requested family preference category at the outset of the process and at the time of scheduling an interview.  Neither the INA nor the CSPA impose such duties and the doctrine of consular nonreviewability bars this court's review of the actions of the consular officials absent a limited exception to the doctrine.  See, e.g., American Sociological Ass'n, 588 F.Supp.2d at 169.  The "new" allegations,[10] do not fall into any such exception.  In fact, allowing the negligence claim to proceed would intrude upon "'[t]he power of Congress to exclude aliens altogether from the United States'" and its power "'to prescribe the terms and conditions upon which [aliens] may come into this country.'" American Sociological Ass'n v. Chertoff, 588 F.Supp.2d at 169 (quoting Kleindienst, 408 U.S. at 766).  Inasmuch as the doctrine of consular nonreviewability bars the proposed negligence and negligent infliction of emotional distress claims for reasons explained in part A(2)(C), the claims are subject to a Rule 12(b)(6) dismissal and therefore futile.

With respect to the proposed misrepresentation claim, defendant correctly points out (Docket Entry # 17) that the

---

[10]  This opinion previously addressed and rejected similar allegations under the consular nonreviewability doctrine in part A(2)(C).

Federal Tort Claims Act's "limited waiver of sovereign immunity does not extend to intentional tort claims." <u>Afshar v. U.S. Dept. of State</u>, 2006 WL 2167233, *1 (D.Kan. July 31, 2006). The <u>Afhsar</u> court dismissed a claim against the State Department alleging that the State Department's failure to properly process the plaintiff's Moldovan fiancée's visa petition caused the fiancée to marry another man and a loss of $15,000 that the plaintiff expended in the relationship. <u>Id.</u> Like the plaintiff in <u>Ashar</u>, plaintiff's misrepresentation claim is "barred by the doctrine of sovereign immunity." <u>Id.</u> If the claim is one for negligent misrepresentation, it fails for the reasons the other proposed negligent claims fail, i.e., the bar presented by the doctrine of consular nonreviewability.

<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court **RECOMMENDS**[11] that the motion to dismiss (Docket Entry # 11) be **ALLOWED**. The motion to amend (Docket Entry # 16) is **DENIED**.

---

[11] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. <u>See</u> Rule 72(b), Fed. R. Civ. P. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge